**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| TELEPHONE SCIENCE CORPORATION, dba Nomorobo, a Delaware Corporation, | ) ) ) ) |
| Plaintiff, | ) ) Case No. 25-cv-00940-VAB |
| v. | ) ) |
| SYNCHRONY FINANCIAL, | ) August 8, 2025 ) |
| Defendant. | ) ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT SYNCHRONY FINANCIAL'S MOTION TO DISMISS**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 4

    A.    TSC and its Honeypot ............................................................. 4

    B.    Synchrony Financial's Customer Relationships and the Calls Alleged in This Lawsuit ....................................................... 5

    C.    TSC's Prior Failed TCPA Litigation ...................................... 8

ARGUMENT .................................................................................................... 11

I.    TSC's Claim Is Barred By Collateral Estoppel. ............................... 11

    A.    The identical issue was raised in the prior proceeding. ...... 13

    B.    The issue was actually litigated and decided in the prior proceeding. ........................................................................... 14

    C.    TSC had a full and fair opportunity to litigate the issue. ................... 15

    D.    The resolution of the issue was necessary to support a valid and final judgment. .................................................................. 17

II.    Even If Collateral Estoppel Did Not Apply, TSC's Claims Do Not Fall Within The Zone Of Interests Protected By The TCPA. ............................... 18

    A.    The zone-of-interests doctrine applies to TCPA claims. ..................... 18

    B.    TSC's interests fall outside the interests protected by the TCPA. ....... 21

CONCLUSION ................................................................................................. 26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Courier Conf. of Am. v. Am. Postal Workers Union AFL-CIO,*
  498 U.S. 517 (1991) ................................................................................................ 21

*Austin v. Downs, Rachlin & Martin,*
  114 F. App'x 21 (2d Cir. 2004) .............................................................................. 12

*Bifolck v. Philip Morris USA Inc.,*
  936 F.3d 74 (2d Cir. 2019) ..................................................................................... 17

*Blonder–Tongue Lab'ys, Inc. v. Univ. of Ill. Found.,*
  402 U.S. 313 (1971) ................................................................................................ 11

*Boguslavsky v. Kaplan,*
  159 F.3d 715 (2d Cir. 1998) .................................................................. 3, 11, 12, 13

*In re Bouchard Transp. Co.,*
  433 F. Supp. 3d 480 (S.D.N.Y. 2019) ................................................................... 17

*Brandon v. NPG Recs., Inc.,*
  840 F. App'x 605 (2d Cir. 2020) ............................................................................ 16

*Conopco, Inc. v. Roll Int'l,*
  231 F.3d 82 (2d Cir. 2000) ..................................................................................... 12

*Curcio v. Grossman,*
  2022 WL 767167 (S.D.N.Y. Mar. 14, 2022) ......................................................... 16

*Flaherty v. Lang,*
  199 F.3d 607 (2d Cir. 1999) ................................................................................... 17

*Gelb v. Royal Globe Ins. Co.,*
  798 F.2d 38 (2d Cir. 1986) ..................................................................................... 16

*Gladstein v. Goldfield,*
  2021 WL 2037799 (D. Conn. May 21, 2021) ......................................................... 14

*Huang v. Shanghai City Corp,*
  2022 WL 1468450 (S.D.N.Y. May 10, 2022) ......................................................... 18

*J2 Glob. Commc'ns, Inc. v. Protus IP Sols.,*
  2010 WL 9446806 (C.D. Cal. Oct. 1, 2010) ............................................... 19, 20, 21

# TABLE OF AUTHORITIES
(continued)

Page

*Jeffreys v. Teamsters Local Union No. 1150*,
  2001 WL 506760 (D. Conn. Feb. 28, 2001) ........................................................... 11

*Jeffreys v. Teamsters Union Loc. 1150*,
  28 F. App'x 92 (2d Cir. 2002) ........................................................... 11, 12

*Lewis v. Assurant, Inc.*,
  2022 WL 4599038 (D. Conn. Sept. 30, 2022) ........................................................... 12

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ........................................................... 18, 20, 21, 22

*Leyse v. Bank of Am. N.A.*,
  804 F.3d 316 (3d Cir. 2015) ........................................................... 19, 20, 23

*Lipin v. Hunt*,
  2015 WL 1344406 (S.D.N.Y. Mar. 20, 2015) ........................................................... 3

*Melito v. Experian Mktg. Sols., Inc.*,
  923 F.3d 85 (2d Cir. 2019) ........................................................... 23, 25

*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012) ........................................................... 22, 25

*Moya v. U.S. Dep't of Homeland Sec.*,
  975 F.3d 120 (2d Cir. 2020) ........................................................... 19, 21, 22, 25, 26

*NatTel LLC v. SAC Cap. Advisors*,
  2005 WL 2253756 (D. Conn. Sept. 16, 2005) ........................................................... 12

*Ortiz v. Tinnerello*,
  2021 WL 11593793 (D. Conn. Jan. 20, 2021) ........................................................... 16

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979) ........................................................... 3, 12

*In re Peeples*,
  880 F.3d 1207 (10th Cir. 2018) ........................................................... 19

*Sakon v. Connecticut*,
  2025 WL 896832 (D. Conn. Mar. 24, 2025) ........................................................... 3

*Santiago v. Merriman River Assocs., LLC*,
  2018 WL 2465358 (D. Conn. June 1, 2018) ........................................................... 6

# TABLE OF AUTHORITIES
(continued)

Page

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC,*
  2016 WL 4179150 (N.D. Ill. Aug. 8, 2016)......................................................*passim*

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC,*
  2017 WL 3443007 (7th Cir. Apr. 28, 2017)............................................................ 10

*Tel. Sci. Corp. v. Asset Recovery Sols., LLC,*
  2017 WL 56634 (N.D. Ill. Jan. 5, 2017) ..........................................................*passim*

*Tel. Sci. Corp. v. Asset Recovery Solutions, LLC,*
  No. 15-cv-5182 (N.D. Ill. 2015)............................................................................ 8, 14

*Wilder v. Thomas,*
  854 F.2d 605 (2d Cir. 1988)................................................................................. 12, 16

## Statutes

Telephone Consumer Protection Act of 1991
  47 U.S.C. § 227(b)(1)(A)....................................................................................... 22, 23
  47 U.S.C. § 227(b)(1)(A)(i) ........................................................................................ 22
  47 U.S.C. § 227(b)(1)(A)(ii) ....................................................................................... 22
  47 U.S.C. § 227(b)(1)(A)(iii) ...............................................................................*passim*
  47 U.S.C. § 227(b)(3).................................................................................................. 20
  47 U.S.C. § 227(c) ...................................................................................................... 23
  Pub. L. No. 102-243, § 2, 105 Stat. 2394 .................................................................. 22

## Other Authorities

47 C.F.R. § 64.1200(m) ..................................................................................................... 2, 8

137 Cong. Rec. 30821 (1991)............................................................................................... 23

*In the Matter of Advanced Methods to Target and Eliminate Unlawful
  Robocalls,*
  33 FCC Rcd. 12024 (Dec. 13, 2018).................................................................................. 2

Restatement (Second) of Judgments § 13 (1982)............................................................... 18

Restatement (Second) of Judgments § 27 (1982)............................................................... 14

## INTRODUCTION

The Telephone Consumer Protection Act was not enacted for this kind of lawsuit or this type of plaintiff. Unlike an ordinary individual or business, plaintiff Telephone Science Corporation is a for-profit company that *sells* telecommunications services. Specifically, TSC, doing business as "Nomorobo," sells a call-blocking service to its customers. Central to that service, TSC has acquired nearly 300,000 telephone numbers that TSC itself describes as the "honeypot." TSC says that it uses calls placed to the "honeypot" lines to identify which calls its service will block for customers who subscribe to its service.

As the complaint here admits (at ¶ 23), TSC previously brought a materially identical lawsuit in the Northern District of Illinois alleging that a defendant placed calls to TSC's honeypot numbers in violation of the TCPA. *See Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, 2016 WL 4179150, at *1 (N.D. Ill. Aug. 8, 2016) ("*TSC I*"). In a comprehensive order, Judge St. Eve, now on the Seventh Circuit, dismissed that lawsuit because TSC does not fall within the zone of interests protected by the TCPA. *See id.* at *7-16; *see also Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, 2017 WL 56634, at *5-6 (N.D. Ill. Jan. 5, 2017) ("*TSC II*") (denying TSC's request for leave to amend as futile because TSC's proposed supplemental allegations did not affect the court's zone-of-interests analysis).

Undaunted, TSC has rebooted its efforts—this time against defendant Synchrony Financial, a financial services company that provides credit cards and offers financing, banking, and other services to consumers and businesses. According to TSC, Synchrony has placed 2,368 calls to TSC's honeypot numbers in violation of

Section 227(b)(1)(A)(iii) of the TCPA—the same provision of the statute at issue in TSC's prior Illinois litigation. That provision prohibits making calls using an "automatic telephone dialing system or an artificial or prerecorded voice" to telephone numbers assigned to "any service for which the called party is charged for the call" without the consent of the called party.

TSC alleges that the calls were "unwanted scam or spam." Compl. ¶ 11. But the exhibits to the complaint—in which TSC lists the alleged calls from Synchrony and a purported transcript of their contents—contradict that assertion. Rather, the exhibits on their face demonstrate that the calls are attempts to reach Synchrony customers for legitimate purposes, such as to provide account information, fraud detection services, or to collect debts. That is why the transcriptions of the calls often refer to those customers by name and refer to specific cards or accounts. Those customers have given their consent to be contacted about their Synchrony accounts or services at the phone number they have provided to Synchrony.

Synchrony maintains robust business procedures to avoid calling incorrect numbers, including properly querying the Federal Communications Commission's Reassigned Numbers Database, and if necessary Synchrony is confident that it will be able to avail itself of the associated safe harbor from TCPA liability. *See* 47 C.F.R. § 64.1200(m); Second Report and Order, *In the Matter of Advanced Methods to Target and Eliminate Unlawful Robocalls*, 33 FCC Rcd. 12024 (Dec. 13, 2018).

There is no reason to reach these issues, however, because the case should be dismissed at the outset for two reasons, each of which independently warrants dismissal.

*First*, the lawsuit fails from the start because TSC is bound by Judge St. Eve's prior judgment that TSC does not fall within the zone of interests protected by Section 227(b)(1)(A)(iii) of the TCPA. The doctrine of nonmutual defensive collateral estoppel (also known as issue preclusion) prohibits TSC from relitigating the zone-of-interests issue here. As Judge Thompson of this Court recently pointed out, the doctrine "'precludes a plaintiff from relitigating identical issues by merely switching adversaries.'" *Sakon v. Connecticut*, 2025 WL 896832, at *8 (D. Conn. Mar. 24, 2025) (quoting *Lipin v. Hunt*, 2015 WL 1344406, at *5 (S.D.N.Y. Mar. 20, 2015), quoting in turn *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)), *appeal pending*, No. 25-814 (2d Cir.).

Yet switching adversaries is all that TSC has done in this case. As detailed below, each of the four elements of collateral estoppel is easily satisfied: (1) the identical issue—whether TSC falls within the TCPA's zone of interests—was raised in the prior proceeding in the Northern District of Illinois; (2) that issue was actually litigated and decided in the prior proceeding; (3) TSC had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits. *See Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998). Moreover, the complaint's attempts to manufacture distinctions between the Illinois case and this one fail as a matter of law, are irrelevant, or both.

3

*Second*, even if this Court were to reach the merits of the zone-of-interests issue itself, it should reach the same result as Judge St. Eve because TSC falls outside the zone of interests protected by Section 227(b)(1)(A)(iii) of the TCPA. TSC has not alleged, and cannot allege, that it has suffered an impairment to *any* interest conceivably protected by the statute, such as "individual privacy rights, public safety interests, and interstate commerce." *TSC I*, 2016 WL 4179150, at *12. The calls it alleges receiving are not an "invasion of privacy and/or general nuisance," nor do they "threaten public safety or impede interstate commerce." *Id*. at *16.

On the contrary, TSC purchases, maintains, and receives calls on its honeypot numbers for the very purpose of offering its call-blocking services to its customers. For that reason, far from being "unwanted or unwelcome," calls to those honeypot numbers "provide the analytical basis on which the Nomorobo service operates." *Id*. at *15. Congress did not intend for the TCPA to finance the business model of for-profit telecommunications service providers like TSC. Put simply, even if the decision in *TSC I* is not preclusive (and it is), its reasoning is compelling and on all fours with this case.

In short, TSC's claim against Synchrony should be dismissed in its entirety. And because no amendment could cure the fundamental legal deficiencies in TSC's lawsuit, the complaint should be dismissed with prejudice.

## BACKGROUND

### A.    TSC and its Honeypot

Plaintiff TSC, doing business as "Nomorobo," sells to its mobile phone customers—for $1.99 to $5.99 per month or $19.99 to $79.99 per year—an app

offering a call-blocking service. Compl. ¶¶ 2, 18, 19, 20. TSC's business model requires it to maintain about 290,000 telephone numbers (referred to by TSC as the "honeypot") to receive and record inbound calls. *Id.* ¶¶ 2, 25-38. According to TSC, its honeypot numbers have not "belonged to any individual in years." *Id.* ¶ 2. Making the blanket assumption that "there is unlikely to be a good reason for anyone to *intend* to dial a honeypot phone line," TSC says that it places numbers that call honeypot lines on a "block list" so that TSC's customers will no longer receive calls from those phone numbers. *Id.* ¶¶ 2, 32.

The self-described "honeypot" forms an integral part of TSC's business. As the complaint explains, the Nomorobo block list is "created using the honeypot system." Compl. ¶ 20. TSC "records many of the calls coming into the honeypot for the purpose of analyzing those calls to ensure they are properly added to the blocklist." *Id.* ¶ 33. It also claims that it uses the data obtained from calls to the honeypot to "provide a better product to its customers." *Id.* ¶ 31. And it acknowledges that "Nomorobo continues to maintain the honeypot" to meet consumer demand for what it refers to as its "basic mobile offering for mobile phones." *Id.* ¶¶ 20, 38.

### B.    Synchrony Financial's Customer Relationships and the Calls Alleged in This Lawsuit

Synchrony is not a telemarketer, but rather a financial services company that, among other things, issues credit cards (Compl. ¶ 39), including retailer-branded credit cards for companies such as Amazon, Lowe's, Sam's Club, and PayPal. Synchrony obtains consent from its cardholders to contact them about their accounts

and services at the phone number they have provided.[1] Synchrony contacts its customers for a variety of legitimate business reasons, including fraud prevention, account status information, and, as the complaint indicates (at ¶¶ 39, 47), debt collection.

TSC alleges that Synchrony made at least 2,368 calls to its honeypot phone lines within the statute of limitations using an "artificial or prerecorded voice." *Id.* ¶¶ 4, 40, 41.[2] According to the complaint, at least 1,050 of the calls self-identify as coming from Synchrony (*id.* ¶ 42 & Ex. A), while the remaining 1,318 calls come from numbers that are allegedly associated with Synchrony (*id.* ¶ 44 & Ex. B). Pointing to these calls, TSC alleges that Synchrony violated Section 227(b)(1)(A)(iii) of the TCPA by purportedly using an "artificial or prerecorded voice" to call telephone numbers registered to Nomorobo and assigned to a telephone service that charges a per-call fee for each incoming call. *Id.* ¶ 54. TSC seeks statutory damages, injunctive relief, and attorneys' fees and costs. *Id.* ¶¶ 56-58.[3]

---

[1]    While beyond the scope of the issues raised in this motion, Synchrony notes that, under its Cardholder Agreements, cardholders agree that (i) Synchrony can contact them for a variety of purposes, including through calls related to their accounts or collection of any unpaid balances; (ii) the phone number they have provided Synchrony belongs to them and/or that they are authorized to provide that number; and (iii) they will tell Synchrony right away if they change their phone number. *See, e.g.*, https://www.synchronybankterms.com/syfterms/pdf/Synchrony_Premier_World_Mastercard_Account_Agreement_and_Pricing_Addendum.pdf.

[2]    Synchrony does not concede that all of the calls reflected in the exhibits to the complaint were made using an artificial or pre-recorded voice, and reserves all rights to challenge the accuracy of that allegation (among many others) at the appropriate time.

[3]    The request for attorneys' fees and costs is contrary to the plain language of the TCPA, which "does not authorize attorneys' fees and costs." *Santiago v. Merriman River Assocs., LLC*, 2018 WL 2465358, at *6 (D. Conn. June 1, 2018) (Bolden, J.).

The complaint assumes that "nearly all" calls to a honeypot phone line "must be spam and scam callers." Compl ¶ 32. But the exhibits attached to the complaint undermine that allegation, instead confirming that the calls on their face are attempts to reach specific Synchrony customers about their Synchrony accounts or services. And the calls are for legitimate reasons, including fraud prevention, account-status information, and collection of unpaid balances. The following excerpts are illustrative examples:

- Call ID 473489334: "This is [S]ynchrony fraud solutions calling for [Name]. We need to verify some recent activity on your Sam's Club Mastercard ending in [last four digits of number]. In order to prevent possible difficulties using your card, it is important that you call us back at your earliest convenience, toll free at 844-657-0167 to verify this activity." (Exhibit A).

- Call ID 448830245: "This is Synchrony Fraud Solutions calling for [Name]. We need to verify some recent activity on your PayPal Mastercard ending in [last three digits]. In order to prevent possible difficulties using your card, it is important that you call us back at your earliest convenience." (Exhibit A).

- Call ID 426694992: "Hi, we're calling for [Name]. If you are [First Name], please press one. If not, press two. And if you ever want to talk with a live rep, just press zero. . . . We have some account information but need to verify who we're talking to. Please confirm you are [Name] by pressing one. If you're not, press two. Or if you'd rather talk with a live rep, you can press zero. Thanks for your time. We'll try back later." (Exhibit A).

- Call ID 453110181: "This is Synchrony Bank calling [Name] about your existing JCPenny credit card account. Please call us at 527-3369. . . . Again, please call 800-527-3369 about your existing JCPenny, any credit card account at your earliest convenience." (Exhibit A).

- Call ID 426910141: "This is Synchrony Bank calling [Name] about your existing Lowe's consumer credit card account. Please call us at 800568." (Exhibit A).

7

- Call ID 497468181: "Hi, we're calling for [Name]. If you're [First Name], please press one. If not, press two. And if you ever want to talk with a live rep, just press zero. If you are, press one. Otherwise press two. We have some account information but need to verify who we're talking to. Please confirm you are [Name] by pressing one. . . . Thank you for your time. We'll try back later." (Exhibit B).

Moreover, while beyond the scope of this motion, Synchrony strongly disputes the complaint's insinuation that Synchrony is indiscriminately or irresponsibly dialing phone numbers. *See* Compl. ¶ 4.[4] Again, the exhibits reflect that the calls on their face are attempts to reach actual Synchrony customers. Synchrony also has robust procedures in place to avoid dialing incorrect numbers, including regularly checking numbers against the FCC's Reassigned Numbers Database. *See* 47 C.F.R. § 64.1200(m).

## C.    TSC's Prior Failed TCPA Litigation

This lawsuit is a rerun of a prior lawsuit; as the complaint acknowledges, TSC is a prior TCPA litigant. *See* Compl. ¶ 22. Most significantly, in 2015, TSC brought a similar TCPA case against Asset Recovery Solutions, LLC ("ARS"), an asset recovery management and debt purchasing company, in the Northern District of Illinois. *See id.* ¶ 23; *Tel. Sci. Corp. v. Asset Recovery Solutions, LLC*, No. 15-cv-5182 (N.D. Ill. 2015). In that case, TSC alleged that ARS violated Section 227(b)(1)(A)(iii) of the TCPA—the same provision at issue here—by using an automatic telephone dialing system to call TSC's honeypot numbers.

---

[4]    Synchrony calls numbers that its customers or their authorized representatives provided to Synchrony with respect to particular credit card accounts.

As the complaint further acknowledges (Compl. ¶ 23), the court (Judge St. Eve, now on the Seventh Circuit) dismissed the case on the grounds that TSC fell outside the zone of interests protected by Section 227(b)(1)(A)(iii) of the TCPA. *See TSC I*, 2016 WL 4179150, at *7-16. Confronting the same business model based on the same honeypot system at issue here, Judge St. Eve noted that "the sole reason TSC subscribes to thousands of honeypot numbers" is to obtain data that it uses for its service offerings. *Id.* at *15 (quotation marks omitted). In other words, "robocalls to TSC Numbers provide the analytical basis on which the Nomorobo service operates." *Id.* And the court explained that the per-call charges for each incoming call did not suffice to place TSC within the TCPA's zone of interests because TSC's alleged "damages are not of the vexatious and intrusive nuisance nature sought to be redressed by Congress in enacting the TCPA, but rather are indirect, economic, and inherent to [its] business." *Id.* at *13 (quotation marks omitted).

Accordingly, Judge St. Eve held, "TSC did not suffer the injury contemplated by the TCPA—that is, invasion of privacy and/or general nuisance"—nor did the calls "threaten public safety or impede interstate commerce." *Id.* at *16.

After that ruling, TSC moved to amend the court's judgment or for leave to further amend its complaint. *See TSC II*, 2017 WL 56634, at *1. Among other things, TSC proposed alleging, similar to its allegations here (Compl. ¶ 35), that once TSC has placed a number on its blocklist, further calls to its honeypot lines from that number do not benefit its business. *TSC II*, 2017 WL 56634, at *3.

The court denied TSC's motion. It held that TSC's proposed allegations did not change the result that "TSC—a telecommunications service provider interested in commercial data collection for its customer-service offerings—does not fall within the class of plaintiffs whom Congress has authorized to sue under the TCPA." *Id.* at *5 (quotation marks omitted). In particular, the allegations did not "alter the reality that TSC used the TSC Numbers as a telecommunications service provider, rather than a consumer," and that TSC "made a business decision to purchase" those numbers for the purpose of offering its commercial services. *Id.*

TSC acknowledges that it chose not to avail itself of its opportunity to further litigate the zone-of-interests issue through an appeal to the Seventh Circuit. It alleges that it "lacked the funds to continue with an appeal." Compl. ¶ 23. The Seventh Circuit's docket reflects that TSC *did* file an appeal but then voluntarily dismissed it. *See Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, 2017 WL 3443007, at *1 (7th Cir. Apr. 28, 2017) (granting agreed motion to voluntarily dismiss the appeal); Motion for Voluntary Dismissal, Dkt. No. 8, *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 17-1275 (7th Cir. Apr. 28, 2017) (TSC "advises the Court that this litigation has been resolved upon terms acceptable to the parties and that those terms are confidential"). TSC further alleges that it is "now under different ownership and wishes to again litigate under the TCPA." Compl. ¶ 24.[5]

---

[5]    TSC is also currently pursuing at least three other TCPA lawsuits in Arizona and Texas federal courts. *See Tel. Sci. Corp. v. RSI Enters., Inc.*, No. 25-cv-2643 (D. Ariz. July 25, 2025); *Tel. Sci. Corp. v. Harris & Harris Ltd.*, No. 25-cv-1239 (N.D. Tex. filed May 15, 2025); *Tel. Sci. Corp. v. Linebarger Goggan Blair & Sampson LLP*, No. 25-cv-00476 (W.D. Tex. filed Mar. 31, 2025).

## ARGUMENT

TSC's claims should be dismissed for two reasons. *First*, Judge St. Eve's conclusion that TSC falls outside the zone of interests protected by Section 227(b)(1)(A)(iii) of the TCPA should be given preclusive effect under the doctrine of nonmutual defensive collateral estoppel. *Second*, if the Court deems it necessary to undertake the zone-of-interests inquiry itself, it should reach the same result as Judge St. Eve and hold that TSC is not an appropriate TCPA plaintiff.

## I.    TSC's Claim Is Barred By Collateral Estoppel.

Judge St. Eve held that TSC does not fall within the zone of interests protected by Section 227(b)(1)(A)(iii) of the TCPA and entered final judgment against TSC on that basis. *See TSC I*, 2016 WL 4179150, at \*7-16; *see also TSC II*, 2017 WL 56634, at \*5-6 (denying TSC's motion for post-judgment relief). TSC cannot relitigate that exact issue in a new forum against a new defendant. That attempted do-over is exactly what nonmutual defensive collateral estoppel is designed to prevent. Put simply, "[t]he court is not required to permit 'repeated litigation of the same issue as long as the supply of unrelated defendants holds out.'" *Jeffreys v. Teamsters Local Union No. 1150*, 2001 WL 506760, at \*4 (D. Conn. Feb. 28, 2001) (quoting *Blonder–Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971)), *aff'd*, 28 F. App'x 92, 94 (2d Cir. 2002).

Collateral estoppel, also known as issue preclusion, bars "a party from relitigating in a subsequent proceeding an issue of law or fact that has already been decided in a prior proceeding." *Boguslavsky v. Kaplan*, 159 F.3d 715, 719-20 (2d Cir. 1998). Dismissal on collateral estoppel grounds is appropriate if, as here, "it is clear

11

from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000); *accord Lewis v. Assurant, Inc.*, 2022 WL 4599038, at *5 (D. Conn. Sept. 30, 2022) (Bolden, J.) (similar).

There are two types of defensive collateral estoppel—mutual and non-mutual. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329-31 (1979). As both the Supreme Court and Second Circuit have recognized, "[m]utuality of estoppel is no longer an essential part of collateral estoppel doctrine." *Wilder v. Thomas*, 854 F.2d 605, 621 (2d Cir. 1988) (citing *Parklane Hosiery*, 439 U.S. at 326-27); *accord Jeffreys v. Teamsters Union Loc. 1150*, 28 F. App'x 92, 94 (2d Cir. 2002) ("[I]dentity of both parties is not an element of collateral estoppel, and thus the plaintiff is incorrect in his argument that he may re-litigate the issue of his disability based on the fact that [the prior case] involved a different defendant."). Accordingly, "third parties unrelated to the original action can bar [a plaintiff] from relitigating that same issue in a subsequent suit." *Austin v. Downs, Rachlin & Martin*, 114 F. App'x 21, 22 (2d Cir. 2004); *accord NatTel LLC v. SAC Cap. Advisors*, 2005 WL 2253756, at *7 (D. Conn. Sept. 16, 2005) (similar). As the Second Circuit put it in *Wilder*, "[t]he central question is whether the plaintiffs have had their day in court, and the answer here is 'yes.'" 854 F.2d at 621 (citation omitted).

The preclusive effect of a prior judgment involving a federal question—here, the judgment in the Northern District of Illinois on a federal TCPA claim—is governed by federal law. *See Boguslavsky*, 159 F.3d at 720 n.4. Under federal law,

collateral estoppel requires that: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* at 720 (quotation marks omitted).

These four elements of collateral estoppel are all readily satisfied here.

## A.    The identical issue was raised in the prior proceeding.

First, the issue on which Synchrony seeks collateral estoppel—whether TSC falls within the zone of interests protected by Section 227(b)(1)(A)(iii) of the TCPA— is identical to the issue raised in TSC's Northern District of Illinois litigation. *See generally TSC I*, 2016 WL 4179150; *TSC II*, 2017 WL 56634.

As described above (at 8-10), TSC sued ARS under the *same* provision of the TCPA (47 U.S.C. § 227(b)(1)(A)(iii)) for telephone calls to the *same* honeypot system of telephone lines purchased and maintained by TSC for the purpose of offering the *same* Nomorobo call-blocking product to TSC's customers. *Compare TSC I*, 2016 WL 4179150, at *1-2 (summarizing allegations in operative second amended complaint) and *TSC II*, 2017 WL 56634, at *3 (same for allegations in proposed third amended complaint) *with* Compl. ¶¶ 18-38 (current allegations about TSC's business and honeypot system). And ARS raised the issue whether TSC falls outside of the TCPA's zone of interests by moving to dismiss on that ground. *See TSC I*, 2016 WL 4179150, at *7.

In apparent anticipation of a collateral estoppel argument, TSC's complaint in this case alleges that TSC had a "somewhat different business model" back when it

filed suit in 2015. Compl. ¶ 23. The only allegation TSC offers in support of that assertion is that "[s]ince then, Nomorobo has developed the Nomorobo Max product that does not rely on the honeypot." *Id.* ¶¶ 24, 37. But that purported distinction is irrelevant. The complaint acknowledges that TSC continues to maintain the honeypot system for offering its basic call-blocking product (*id.* ¶¶ 20, 38)—the same type of product that it offered at the time of *TSC I*—and TSC's claims against Synchrony are based entirely on alleged calls to its honeypot telephone lines (*id.* ¶ 40). There is accordingly no daylight between the zone-of-interests issue presented in *TSC I* and this case.

### B. The issue was actually litigated and decided in the prior proceeding.

Second, TSC cannot reasonably debate that the zone-of-interests issue was actually litigated by TSC and decided by Judge St. Eve in the Northern District of Illinois. An issue is "actually litigated and decided" if that issue was properly raised, submitted for determination, and necessarily determined in a prior proceeding. *See Gladstein v. Goldfield*, 2021 WL 2037799, at *2 (D. Conn. May 21, 2021) (Bolden, J.); Restatement (Second) of Judgments § 27 (1982). "An issue may be submitted and determined on a motion to dismiss for failure to state a claim." Restatement (Second) of Judgments § 27 (1982).

As TSC is of course aware, ARS squarely raised the zone-of-interests argument in its Rule 12(b)(6) motion to dismiss in the Northern District of Illinois, and TSC responded to that argument in its opposition, devoting several pages to that issue. *See* TSC's Opposition to Mot. to Dismiss, Dkt. 95, at 13-18, *Tel. Sci. Corp. v. Asset*

*Recovery Sols.*, No. 15-cv-5182 (N.D. Ill. Mar. 23, 2016). The zone-of-interests issue was therefore submitted for the court's determination.

The court then actually decided the issue. Indeed, Judge St. Eve's detailed order granted ARS's 12(b)(6) motion *exclusively* on the basis of ARS's zone-of-interests argument. *See TSC I*, 2016 WL 4179150, at *7-16. The court made clear that it was "not reach[ing] ARS' other arguments in favor of Rule 12(b)(6) dismissal." *Id.* at *17.

In short, the second requirement for collateral estoppel is easily satisfied because the issue of whether TSC falls within the zone of interests protected by the TCPA was actually litigated and decided in the Northern District of Illinois.

### C.    TSC had a full and fair opportunity to litigate the issue.

For related reasons, TSC had a full and fair opportunity to litigate whether it falls within the zone of interests protected by the TCPA. TSC cannot contend that it lacked adequate incentive to fully litigate its claims in the prior litigation, which sought statutory damages for hundreds of alleged telephone calls. *See TSC I*, 2016 WL 4179150, at *2. Nor can it contend that the procedures available to it in that federal court were in any way inadequate.

On the contrary, TSC did in fact fully litigate the zone-of-interests issue. As noted above, it responded at length to ARS's argument on that issue in opposing the motion to dismiss. Prior to the briefing on that motion, TSC had also *twice* amended its complaint to try to address the zone-of-interests issue and other arguments raised in ARS's previous motions to dismiss. *See TSC II*, 2017 WL 56634, at *2 (summarizing procedural history).

15

Moreover, after Judge St. Eve granted ARS's motion to dismiss, TSC moved the court for post-judgment relief, availing itself of yet another opportunity to persuade the court that it was within the zone of interests protected by the TCPA, including by proposing new allegations similar to the allegations it has made in this case. *See id.* It doesn't matter that TSC's efforts failed; TSC cannot deny that it "had [its] day in court" on the issue. *Wilder*, 854 F.2d at 621; *see also*, *e.g.*, *Ortiz v. Tinnerello*, 2021 WL 11593793, at *3 (D. Conn. Jan. 20, 2021) (this prong satisfied because "plaintiff was fully able to raise the same factual or legal issues in [the] earlier litigation") (quotation marks omitted).

The complaint suggests that TSC will argue that it is entitled to try again because its prior owner did not want to pay to continue litigating the case through an appeal to the Seventh Circuit. Compl. ¶ 23. But any such argument would fail under binding Second Circuit precedent, because a plaintiff's "[f]ailure to appeal does not prevent preclusion." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986). More recently, citing *Gelb*, the Second Circuit held that a plaintiff who did not seek appellate review of a prior adverse decision from a federal district court in Florida was nevertheless barred from relitigating the issue by collateral estoppel. *Brandon v. NPG Recs., Inc.*, 840 F. App'x 605, 608-09 (2d Cir. 2020). So too here: If TSC was dissatisfied with the district court's decision, "the proper recourse was an appeal to the [Seventh] Circuit Court of Appeals, not a second bite at the apple in the" District of Connecticut. *Id.*; *see also*, *e.g.*, *Curcio v. Grossman*, 2022 WL 767167, at *5 (S.D.N.Y. Mar. 14, 2022) ("Plaintiff had a full and fair opportunity to litigate those

16

claims [in her prior lawsuit]; she had an opportunity to appeal the dismissal of that action, but did not do so.").

Moreover, as noted above (at 10), TSC *did* file an appeal to the Seventh Circuit; it just chose to resolve the case rather than pursue the appeal to completion. *See* page 10 & note 5, *supra*. That makes it all the more clear that TSC cannot credibly assert that it lacked a full and fair *opportunity* to litigate the zone-of-interests issue in its prior lawsuit. *See In re Bouchard Transp. Co.*, 433 F. Supp. 3d 480, 494 (S.D.N.Y. 2019) (noting that the plaintiff had a full and fair opportunity to litigate when it filed an appeal but then settled and voluntarily dismissed the appeal). TSC's choice to abandon its appellate opportunities does not reward it with another bite at the apple on the same issue that it fully litigated and lost in the Northern District of Illinois.

## D. The resolution of the issue was necessary to support a valid and final judgment.

Finally, the determination that TSC does not fall within the TCPA's zone of interests was undeniably necessary to Judge St. Eve's decision to dismiss TSC's prior action with prejudice.

The resolution of an issue is necessary to support a valid and final judgment "when the final outcome hinges on it." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 82 (2d Cir. 2019); *see also*, *e.g.*, *Flaherty v. Lang*, 199 F.3d 607 (2d Cir. 1999) (finding collateral estoppel barred plaintiff from relitigating due process claim where prior court's conclusion that plaintiff "had received due process was necessary to support its judgment"). "The 'final judgment' necessary for the purposes of issue preclusion 'includes any prior adjudication of an issue in another action that is determined to be

17

sufficiently firm to be accorded conclusive effect.'" *Huang v. Shanghai City Corp*, 2022 WL 1468450, at \*16 (S.D.N.Y. May 10, 2022) (quoting Restatement (Second) of Judgments § 13).

That standard is easily satisfied here for the same reasons discussed above in connection with the second collateral estoppel requirement. The final judgment in the Northern District of Illinois dismissing TSC's complaint with prejudice hinged entirely and exclusively on the court's conclusion that TSC fell outside the zone of interests protected by the TCPA. *See TSC I*, 2016 WL 4179150, at \*16-17.

\*    \*    \*

In sum, nonmutual defensive collateral estoppel bars TSC's claim against Synchrony in its entirety. That is fatal to TSC's case. The Court should accordingly dismiss the complaint without leave to amend.

## II.    Even If Collateral Estoppel Did Not Apply, TSC's Claims Do Not Fall Within The Zone Of Interests Protected By The TCPA.

If this Court decides to reach the zone-of-interests question itself rather than according *TSC I* preclusive effect, it should reach the same conclusion as Judge St. Eve and dismiss the complaint because TSC's claims fall outside the zone of interests protected by the TCPA.

### A.    The zone-of-interests doctrine applies to TCPA claims.

To assert a statutory cause of action, TSC must be within the "zone of interests" that the statute protects. *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-32 (2014). The Supreme Court has made clear that the zone-of-interests doctrine "applies to all statutorily created causes of action." *Id.* at 129. And Congress

is presumed to "legislate against the background of the zone-of-interests limitation, which applies unless it is expressly negated" by statutory language demonstrating an "intent to protect a more-than-usually expansive range of interests." *Id.* at 129-30 (citation modified).

Put another way, unless Congress expressly says otherwise, the zone-of-interests doctrine imposes greater limitations on who may sue under a federal statute than the requirements of Article III standing. As the Supreme Court put it in *Lexmark*, "A consumer who is hoodwinked into purchasing a disappointing product may well have an injury-in-fact cognizable under Article III, but he cannot invoke the protection of the Lanham Act[.]" *Id.* at 132. "The very point of the zone-of-interests doctrine is that not every injury traceable to the violation of a federal statute is remediable[.]" *In re Peeples*, 880 F.3d 1207, 1215 (10th Cir. 2018) (cited approvingly in *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120, 133 (2d Cir. 2020) (addressing zone-of-interests test in connection with Immigration and Naturalization Act and Due Process Clause)).

Nothing in the TCPA's text indicates that Congress intended to negate the zone-of-interests limitation. *See TSC I*, 2016 WL 4179150, at *10; *see also Leyse v. Bank of Am. N.A.*, 804 F.3d 316, 324 (3d Cir. 2015) (holding that the zone-of-interests doctrine limits who may sue under the TCPA beyond the requirements of Article III standing, while recognizing that the plaintiff before it could assert privacy and nuisance interests falling within that zone); *J2 Glob. Commc'ns, Inc. v. Protus IP Sols.*, 2010 WL 9446806, at *4 (C.D. Cal. Oct. 1, 2010) (holding that plaintiff had

19

Article III standing but fell outside the TCPA's zone of interests). Indeed, the language used in the TCPA's relevant private cause of action—authorizing a "person or entity" to bring an action "*based* on a violation of this subsection" (47 U.S.C. § 227(b)(3) (emphasis added))—is little different than the provision of the Lanham Act at issue in *Lexmark*, which "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising." 572 U.S. at 129 (quoting 15 U.S.C. § 1125(a)). That language cannot be "[r]ead literally" in a vacuum, the Supreme Court explained, unless there is further indication that "Congress meant to allow all factually injured plaintiffs to recover." *Id.* (quotation marks omitted); *see also Leyse*, 804 F.3d at 324 (observing that the "Supreme Court's decision in *Lexmark* is instructive" in interpreting the TCPA).

Moreover, as Judge St. Eve observed, "[t]he TCPA confers a private right of action on the basis of individualized violations; it does not confer a right upon 'any person' to commence an action in the name of consumer protection." *TSC I*, 2016 WL 4179150, at *9. As the Third Circuit put it, "Congress surely did not intend, for example, to enable a plaintiff to sue merely because she learned that a friend or neighbor had received a robocall." *Leyse*, 804 F.3d at 324; *see also J2 Glob. Commc'ns*, 2010 WL 9446806, at *3-4 (holding that only "the recipient" of an unsolicited fax advertisement can invoke the TCPA's private cause of action). That makes the TCPA's private right of action "'significantly narrower'" than citizen-suit provisions, like the one in the Endangered Species Act, that the Supreme Court has suggested

may displace the usual zone-of-interests limitation. *TSC I*, 2016 WL 4179150, at *9

(quoting *J2 Glob. Commc'ns*, 2010 WL 9446806, at *4).

In short, the ordinary zone-of-interests limitation on statutory causes of action

applies to the TCPA. And the Supreme Court has instructed courts to apply that test

by "determin[ing], using traditional tools of statutory interpretation, whether a

legislatively conferred cause of action encompasses a particular plaintiff's claim."

*Lexmark*, 572 U.S. at 127; *see also*, *e.g.*, *Air Courier Conf. of Am. v. Am. Postal Workers

Union AFL-CIO*, 498 U.S. 517, 524 (1991) ("We must inquire then, as to Congress'

intent in enacting the [Private Express Statutes] in order to determine whether

postal workers were meant to be within the zone of interests protected by those

statutes"). In other words, the Court's task "is (i) to discern the interests sought to be

protected by the statute at issue, and (ii) to inquire whether TSC's interests are

among them." *TSC I*, 2016 WL 4179150, at *10. As we next explain, TSC's asserted

interests fall well outside any of the interests that the TCPA protects.

**B.    TSC's interests fall outside the interests protected by the TCPA.**

As the Second Circuit has emphasized, the zone-of-interests limitation "is not

toothless," and TSC must show "more than a marginal relationship to the statutory

purposes" to be able to sue for a violation of Section 227(b)(1)(A)(iii) of the TCPA.

*Moya*, 975 F.3d at 132; *see also Air Courier Conference*, 498 U.S. at 529-30 (rejecting

an overly permissive approach to statutory interpretation that would "deprive the

zone-of-interests test of virtually all meaning").

Moreover, "the zone-of-interests test is to be determined not by reference to the overall purpose of the Act in question . . . but by reference to the *particular provision* of law upon which [the plaintiff] relies." *Moya*, 975 F.3d at 131 (citation modified).

As with the provisions of the Lanham Act at issue in *Lexmark*, identifying the interests protected by Section 227(b)(1)(A) of the TCPA "requires no guesswork," because Congress included in the statute a "detailed statement of the statute's purposes." *Lexmark*, 572 U.S. at 131. The subject of Section 227(b)(1)(A) is calls made "using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A). Congress included in the TCPA detailed findings on the subject of "automated or prerecorded telephone calls," repeatedly describing the harms from those calls that the statute seeks to prevent in terms of "nuisance and an invasion of privacy" or "interfere[nce] with interstate commerce." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(10), (12)-(14), 105 Stat. 2394.[6]

It is no surprise, then, that courts—including the Supreme Court and the Second Circuit—have repeatedly described the interests protected by the TCPA in similar terms. Quoting Congress's findings, the Supreme Court has described the TCPA as a statute addressing "intrusive nuisance calls" that may cause "an invasion of privacy." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370, 371-72 (2012). The

---

[6]    Congress further noted a "risk to public safety" for calls that tied up "an emergency or medical assistance telephone line" (which, of course, are not at issue here). *Id.* § 2(5). Calls to emergency telephone lines or medical lines are addressed, respectively, by 47 U.S.C. § 227(b)(1)(A)(i) and 47 U.S.C. § 227(b)(1)(A)(ii)—not 47 U.S.C. § 227(b)(1)(A)(iii), the specific provision TSC alleges was violated.

Second Circuit has similarly remarked that "[n]uisance and privacy invasion were the harms Congress identified when enacting the TCPA." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93 (2d Cir. 2019) (quotation marks omitted); *see also Leyse*, 804 F.3d at 326 ("nuisance and invasion of privacy"). As Judge St. Eve summarized, underlying each of the "several interests protected under 47 U.S.C. § 227(b)(1)(A)(iii), including individual privacy rights, public safety interests, and interstate commerce," is "the principle that a person or business should be free from *nuisance* robocalls and their associated costs." *TSC I*, 2016 WL 4179150, at *12 (emphasis added).[7]

As Judge St. Eve correctly concluded, TSC cannot assert any of these harms. *See TSC I*, 2016 WL 4179150, at *15-16; *TSC II*, 2017 WL 56634, at *5-6. TSC has not claimed and cannot claim that the calls are an invasion of its privacy, a nuisance, or interfere with interstate commerce. On the contrary, calls to TSC's honeypot numbers are integral to TSC's call-blocking product and "provide the analytical basis on which the Nomorobo service operates." *TSC I*, 2016 WL 4179150, at *15. Indeed,

---

[7]    Courts may further look to the "overall context" of a statute in the zone-of-interests analysis "only when doing so is helpful to understand the meaning of the specific provisions at issue." *Moya*, 975 F.3d at 131 n.7. The interests protected by Section 227(b)(1)(A) of the TCPA are already clear, but other sections of the TCPA confirm that Congress was interested in protecting "privacy rights." *See, e.g.*, 47 U.S.C. § 227(c) (authorizing the FCC to create a do-not-call registry "to protect residential telephone subscribers' privacy rights").

To the extent legislative history has any relevance, it too confirms that the TCPA was enacted to address privacy and nuisance harms. The TCPA's sponsor described unwanted calls as a nuisance and invasion of our privacy, expressing concern that "[t]hey wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30821–30822 (1991) (statement of Sen. Hollings). TSC, of course, has not alleged anything of the sort here.

TSC acknowledges that it could not offer its basic call-blocking product without its honeypot lines. Compl. ¶ 38.

TSC's allegation that "Nomorobo does not maintain these [honeypot] lines for the purpose of bringing litigation under the TCPA or any related statute" (Compl. ¶ 31) is thus a red herring. TSC does not deny, nor could it, that calls to the honeypot numbers are central to its business model (*id.* ¶¶ 2, 25-38); that it maintains the honeypot lines "to provide a better product to its customers" (*id.* ¶ 31); and that TSC purchased the numbers for the very purpose of generating and updating the "blocklist" that drives its call-blocking product (*id.* ¶¶ 20, 25-28, 33).

In other words, "the sole reason TSC subscribes to thousands of honeypot numbers is to gather a large quantity of data in order to detect high frequency robocalling patterns and to distinguish between callers for its Nomorobo customer-service offerings." *TSC I*, 2016 WL 4179150, at *15 (quotation marks omitted). Far from being the victim of unwanted calls, TSC made a "business decision" to purchase telephone numbers "on a per-line charge" "for the purpose of data collection and identification." *TSC II*, 2017 WL 56634, at *5. Nothing in the TCPA suggests that Congress intended for the statute to finance the business model of a for-profit provider of telecommunications services like TSC.

Relatedly, the per-call costs TSC alleges incurring (Compl. ¶¶ 3, 34) are "not of the vexatious and intrusive nuisance nature sought to be redressed by Congress in enacting the TCPA, but rather are indirect, economic, and inherent to [its] business." *TSC I*, 2016 WL 4179150, at *15. Indeed, if *any* per-call charge were enough to bring

a plaintiff within the zone of interests protected by Section 227(b)(1)(A)(iii), as TSC apparently believes, then the zone-of-interests test—and Congress's repeated findings that the statute was intended to address privacy and nuisance harms (*see Mims*, 565 U.S. at 371-72; *Melito*, 923 F.3d at 93)—would be rendered irrelevant.

Simply put, nothing in Section 227(b)(1)(A)(iii) indicates that Congress intended to "protect a telecommunications service provider interested in commercial data collection." *TSC II*, 2017 WL 56634, at *2, *5.

Finally, TSC's repeated assertion that its product helps its *customers* avoid unwanted robocalls (Compl. ¶¶ 1-2, 12-13, 25) offers it no assistance, because TSC's *own* interests are not among those protected by the TCPA. Judge St. Eve rejected a similar argument, explaining that "TSC's attempt to conflate the two [TSC's own interests and its customers' interests] must fail." *TSC I*, 2016 WL 4179150, at *16; *see also id.* ("TSC does not explain how ARS robocalls to *its* honeypot numbers—as opposed to its customers' numbers—threaten public safety or impede interstate commerce."); *TSC II*, 2017 WL 56634, at *6.

The Second Circuit's decision in *Moya* relies on similar reasoning. In *Moya*, a non-profit advocacy organization assisting naturalization applicants alleged that the government failed to implement a fair and effective system for approving disability exemptions in violation of naturalization provisions of the Immigration and Nationality Act ("INA"). The Second Circuit held that the zone-of-interests limitation precluded the organization from suing for violations of the INA because the proper plaintiffs were the "naturalization applicants" themselves, not an advocacy

organization asserting a "derivative" interest. *Moya*, 975 F.3d at 135; *see also id.* at 132 (explaining that the zone-of-interests doctrine "plainly requires more than an altruistic concern for somebody else's rights"). The Second Circuit further explained that "[t]he fact that [the non-profit] expends resources in pursuit of its mission does not mean that Congress intended to protect its interests through the naturalization provisions of the INA." *Id.* at 134.

Here too, TSC must demonstrate that TSC *itself*, not its customers, falls within the zone of interests protected by the TCPA. And TSC's allegation that it expends resources maintaining the honeypot "in pursuit of its mission does not mean that Congress intended to protect its interests through the" TCPA. *Id.*

In sum, TSC falls outside the zone of interests protected by Section 227(b)(1)(A)(iii) of the TCPA, and its complaint should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss the complaint with prejudice.

By: */s/ Matthew D. Ingber*
Matthew D. Ingber (*pro hac vice*)
Rachel A. Fishbein (*pro hac vice*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 506-2500
mingber@mayerbrown.com
rfishbein@mayerbrown.com

Archis A. Parasharami (*pro hac vice*)
Daniel E. Jones (*pro hac vice*)
1999 K Street NW
Washington DC 20006

Tel: (202) 263-3000
aparasharami@mayerbrown.com
djones@mayerbrown.com

*and*

**PULLMAN & COMLEY LLC**
James T. (Tim) Shearin, Esq. (ct01326)
Bianca LoGiurato, Esq. (ct31395)
850 Main Street
Bridgeport, CT 06601
Tel: (203) 330-2240
jtshearin@pullcom.com
blogiurato@pullcom.com

*Attorneys for Defendant Synchrony Financial*

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 8, 2025, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: August 8, 2025

*/s/ Matthew D. Ingber*
Matthew D. Ingber (*pro hac vice*)
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 506-2500
mingber@mayerbrown.com

28